UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN DOE subscriber assigned IP address ) <br> 73.36.158.67, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 1:25-cv-10611 <br><br> Judge: John J. Tharp, Jr. <br> Magistrate Judge: Keri L. Hotaling |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

i

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. FACTS ..........................................................................................................................2

   A. Plaintiff Has A Serious Copyright Infringement Problem......................................2

   B. Plaintiff Brings Its Litigation in Good Faith............................................................3

III. ARGUMENT.................................................................................................................4

   A. Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant...................................................................................................4

   B. Good Cause Exists for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena..........................................................................................................5

      1. Plaintiff's Complaint Makes A Prima Facie Claim for Direct Copyright Infringement...5

      2. Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant..........................................................................7

      3. There Are No "Alternative Means" to Uncover Doe Defendant's True Identity .............7

      4. The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim..8

      5. Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights from Mass BitTorrent Infringers ...........................8

   C. Protective Order ........................................................................................................9

# **TABLE OF AUTHORITIES**

**Cases**

*808 Holdings LLC v. Collective of Jan. 3, 2012 Sharing Hash*,
  No. CV 12-2251-CAS (EX), 2012 WL 13012725 (C.D. Cal. Oct. 1, 2012) .............................. 4
*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) ................................... 6
*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) .................................................. 8
*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  No. CV 16-1972, 2018 WL 650316 (4th Cir. Feb. 1, 2018) ....................................................... 8
*Dallas Buyers Club, LLC v. Does 1-28*,
  No. CV 14-4927, 2014 WL 3642163 (N.D. Ill. July 22, 2014) .................................................. 4
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ............................................ 5
*First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 248 (N.D. Ill. 2011) .............................. 5
*Hard Drive Prods. v. Does 1-48*,
  No. CV 11-9062, 2012 WL 2196038 (N.D. Ill. June 14, 2012) ................................................. 9
*Ibarra v. City of Chicago*, 816 F.Supp.2d 541, 554 (N.D. Ill. 2011) .............................................. 5
*In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) ................................................. 6
*John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012) ........................................ 7
*Osiris Entm't, LLC v. Does 1-38*,
  No. CV 13-4901, 2013 WL 4478908 (N.D. Ill. Aug. 20, 2013) ................................................. 9
*PHE, Inc. v. Does 1-122*, No. CV 13-786, 2014 WL 1856755 (N.D. Ill. May 7, 2014) ............... 6
*Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) .......................... 5, 8
*TCYK, LLC v. Does 1-87*,
  No. CV 13-3845, 2013 WL 3465186 (N.D. Ill. July 10, 2013) .............................................. 5, 8
*Third Degree Films Inc. v. Does 1-24*,
  No CV. 12-1341, 2012 WL 5928527 (C.D. Ill. Nov. 26, 2012) ................................................. 7
*Third Degree Films, Inc. v. Does 1-2010*,
  No. CV 4:1- 2-MC, 2011 WL 4759283 (N.D. Ind. Oct. 6, 2011) ........................................ 7, 8
*United States v. Caira*, 833 F.3d 803, 809 (7th Cir. 2016) ............................................................. 9

**Statutes**

17 U.S.C. § 106(1) ........................................................................................................................... 6
17 U.S.C. § 410(c) ........................................................................................................................... 6

**Other Authorities**

Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The
  Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United
  States House Of Representatives, (January 2011) at
  http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-
  11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-
  pornography-and-other-internet-crimes.pdf ............................................................................... 2

**Rules**

Fed. R. Civ. P. 26(d)(1) ................................................................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum of Points and Authorities in support of its Motion for Leave to serve a third-party subpoena prior to a Rule 26(f) conference.

**I. INTRODUCTION**

Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") is the owner of original, award winning motion pictures featured on its brand's subscription-based adult websites. Unfortunately, Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Declaration of Jorge Arco, attached hereto as Exhibit "A."

Strike 3, using its proprietary forensic software, VXN Scan and the Cross Reference Tool, monitored and detected the infringement. *See id.* at ¶ 47. This software recorded Defendant's IP address illegally distributing Strike 3's motion pictures. *See* Declaration of Patrick Paige, attached hereto as Exhibit "B". This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity. *Id*. at ¶ 28. As a result, Plaintiff now seeks leave to serve limited, immediate discovery on Defendant's ISP, Comcast Cable Communications, LLC (Comcast Cable) so that Plaintiff may learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service. Further impelling expediency,

Defendant's ISP only maintains the internal logs of the requested information for a brief period of time.[1]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II. FACTS

### A. Plaintiff Has A Serious Copyright Infringement Problem

Strike 3 holds title to the intellectual property associated with the *Blacked*, *Blacked Raw*, *MILFY*, *Slayed*, *Tushy*, *Tushy Raw*, *Vixen*, and *Wifey* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. Decl. Arco at ¶ 14. Strike 3 is owned entirely by General Media Systems ("GMS") and has existed since 2015. *Id.* at ¶ 9.

Although it started out small, the Brands' websites now host approximately 15 million visitors each month. *Id.* at ¶ 15. This success is no fluke. Strike 3's philosophy has always been to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films. *Id.* at ¶¶ 17–18. Moreover,

---

[1] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at
http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

Strike 3's motion pictures are known for having some of the highest production budgets of any in the adult industry. *Id.* at ¶ 20.

Because of this commitment to quality, the websites for the Brands have a subscriber base that is one of the highest of any adult sites in the world. *Id.* at ¶ 21. Strike 3 is also frequently the number one seller of adult DVDs in the United States. *Id.* at ¶ 22. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 23. This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 24.

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3, and Strike 3 "can compete in the industry, but [it] cannot compete when [its] content is stolen." *Id.* at ¶ 27. To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id.* at ¶ 40.

B. **Plaintiff Brings Its Litigation in Good Faith**

Strike 3 is mindful of the nature of the litigation and its goal is to not disclose publicly the choices that people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent. *Id.* at ¶ 34. Therefore, Strike 3 only files strong cases against extreme infringers. *Id.* at ¶ 35. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content. *Id.* Strike 3 does not seek settlements unless initiated by a defendant or a defendant's counsel. *Id.* at ¶ 36. Additionally, Strike 3 does not send demand letters. *Id.* Finally, although certainly Strike 3 does not believe anyone should be embarrassed about

3

enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding the content they choose to enjoy. Accordingly, Strike 3 has a policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of a case; and (2) stipulate to requests by defendants to the entry of orders in litigation to maintain the confidentiality of a defendant's identity. Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, and to enforce its rights in a way that is mindful of a defendant's privacy interests.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs and licenses. *Id.* at ¶ 38. Strike 3's goal is to deter piracy (and seek redress for its harmful consequences) and direct those who infringe content to the avenue of legitimately acquiring access to Strike 3's works. *Id.*

### III. ARGUMENT

#### A. Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant

"[T]his is precisely the type of case for which expedited jurisdictional discovery is often appropriate, because plaintiff is ignorant of . . . the identity" of Doe Defendant. *808 Holdings LLC v. Collective of Jan. 3, 2012 Sharing Hash*, No. CV 12-2251-CAS (EX), 2012 WL 13012725, at *5 (C.D. Cal. Oct. 1, 2012). "Rule 26 does not set forth a standard for doing so, but courts in this circuit have generally granted such motions on a showing of 'good cause.'" *Dallas Buyers Club, LLC v. Does 1-28*, No. 14 CV 4927, 2014 WL 3642163, at *2 (N.D. Ill. July 22, 2014) (collecting cases). "Good cause exists when 'the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Id.* (citation omitted).

4

"Courts evaluate a motion for expedited discovery 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *TCYK, LLC v. Does 1-87*, No. 13 CV 3845, 2013 WL 3465186, at *2 (N.D. Ill. July 10, 2013) (citing *Ibarra v. City of Chicago*, 816 F.Supp.2d 541, 554 (N.D. Ill. 2011) (internal quotations omitted)). Courts throughout the country have adopted framework established in *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) to evaluate whether early discovery is appropriate. *See First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 248 (N.D. Ill. 2011) (denying a motion to quash an analogous third-party subpoena). The five-factor analysis examines:

> (1) a concrete showing of a prima facie claim of actionable harm, (2) specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) a central need for the subpoenaed information to advance the claim, and (5) the party's expectation of privacy.

*Id.* at 248–49 (citing *Sony Music Entm't*, 326 F. Supp. 2d at 564–65). For the foregoing reasons, Plaintiff has "good cause" for leave to take such early discovery.

**B. Good Cause Exists for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena**

  1. *Plaintiff's Complaint Makes A Prima Facie Claim for Direct Copyright Infringement*

To make a prima facie claim for copyright infringement, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no

5

point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 52–54.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office. *See* 17 U.S.C. § 410(c); *see also* Complaint at ¶¶ 46, 49. Plaintiff's prima facie allegations of infringement are confirmed by VXN, which as explained, monitored and recorded evidence of the infringement. *See generally* Decl. Arco; *see generally* Decl. Paige. Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted works. *See* Declaration of Susan B. Stalzer, Exhibit "C."

Plaintiff has also made a plausible prima facie showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiff's Complaint alleges that Doe Defendant not only downloaded Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶ 47. The Northern District has previously found that "[s]haring, or 'swapping,' copyrighted works online can infringe copyrights and violate the copyright holders' reproduction and distribution rights." *PHE, Inc. v. Does 1-122*, No. CV 13-786, 2014 WL 1856755, at *2 (N.D. Ill. May 7, 2014) (citing *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) ("If the music is copyrighted, [online] swapping, which involves making and transmitting a digital copy of the music, infringes copyright. The swappers . . . are the direct infringers.")). Thus, the first factor weighs in Plaintiff's favor.

### 2. Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant

"[T]he discovery sought by Plaintiff is narrow and focused." *Third Degree Films Inc. v. Does 1-24*, No CV. 12-1341, 2012 WL 5928527, at *2 (C.D. Ill. Nov. 26, 2012). Plaintiff's subpoena is limited and only "seeks concrete and narrow information: the name and address of the subscriber associated with [Doe Defendant's] IP address," *John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012), and "[t]here is a reasonable likelihood that this information will lead to information sufficient to identify and make possible service upon the Doe defendants." *Third Degree Films, Inc. v. Does 1-2010*, No. CV 4:1- 2-MC, 2011 WL 4759283, at *5 (N.D. Ind. Oct. 6, 2011); *Third Degree Films*, No CV. 12-1341, 2012 WL 5928527 at *2.

### 3. There Are No "Alternative Means" to Uncover Doe Defendant's True Identity

At this early stage in litigation, Plaintiff has a limited view into Defendant's true identity, only having access to the offending IP address. People using the Internet are anonymous to the public, but the ISPs responsible for assigning any given IP address "know who an address is assigned to and how to get in contact with them."[2] ISPs' records "are the only available evidence that allows us to investigate who committed crimes on the Internet. They may be the only way to learn, for example, that a certain Internet address was used by a particular human being to engage in or facilitate a criminal offense."[3]

---

[2] *Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4, available at https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.; *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at https://www.arin.net/policy/nrpm.html#four2.

[3] Statement from Jason Weinstein, n.2, *supra*.

Since there is no public registry of what IP addresses correspond to which subscribers, Plaintiff's subpoena is necessary to advancing litigation. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. CV 16-1972, 2018 WL 650316, at *2 (4th Cir. Feb. 1, 2018) (noting "only the ISP can match the IP address to the subscriber's identity"). As there exist no other means to correspond the subscriber's identity with his or her IP address, this factor favors Plaintiff's application for leave.

### 4. *The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim*

"Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation . . . ." *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566. "Plaintiff needs this expedited discovery because it will otherwise be unable to maintain this litigation, as it has no other way of identifying the defendants." *TCYK*, No. 13 CV 3845, 2013 WL 3465186 at *2.

### 5. *Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights from Mass BitTorrent Infringers*

Doe Defendant's "expectation of privacy, if any, is minimal."[4] *Third Degree Films*, No. CV 4:1- 2-MC, 2011 WL 4759283 at *5. "Individuals who download and distribute copyrighted material without permission cannot expect their actions to be protected." *Id.* (citation omitted). "[C]ourts have recognized that because internet subscribers must convey their identity and other information to an ISP in order to

---

[4] Some courts include Defendant's First Amendment right to anonymous online speech in this factor. *See e.g.*, *Third Degree Films, Inc. v. Does 1-2010*, No. CV 4:1- 2-MC, 2011 WL 4759283 (N.D. Ind. Oct. 6, 2011) (denying motion to quash under *Sony* analysis). "But the First Amendment does not protect copyright infringement, and 'to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected.'" *Hard Drive Prods. v. Does 1-48*, No. CV 11- 9062, 2012 WL 2196038, at *4 (N.D. Ill. June 14, 2012) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010)).

establish an account, they do not have a reasonable expectation of privacy in their subscriber information." *Hard Drive Prods. v. Does 1-48*, No. CV 11- 9062, 2012 WL 2196038, at *4 (N.D. Ill. June 14, 2012) (collecting cases) (internal quotations omitted); *see also United States v. Caira*, 833 F.3d 803, 809 (7th Cir. 2016) (finding that when a party "voluntarily shared his I.P. addresses with [a third party], he had no reasonable expectation of privacy in those addresses). As a result, all five factors weigh in favor of granting Plaintiff's Motion for Leave.

### C. Protective Order

Previously, this Court has found it appropriate to issue a protective order for Does to safeguard the early discovery process. *See e.g.*, *Osiris Entm't, LLC v. Does 1-38*, No. CV 13-4901, 2013 WL 4478908, at *13–14 (N.D. Ill. Aug. 20, 2013) (allowing defendant to remain pseudonymous). Strike 3 respectfully encourages the Court to establish such procedures here.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to Defendant's ISP.

Dated: September 17, 2025

                                        Respectfully submitted,

                                        By: /s/ *Jeremy J. Thompson*
                                        **Jeremy J. Thompson** (Reg. # 402173)
                                        The Law Office of Jeremy J. Thompson PLLC
                                        5200 Willson Road, Suite 150
                                        Edina, MN 55424
                                        Tel.: (952) 952-1883
                                        Fax: (952) 952-1884
                                        Email: jeremy@jthompson.law